Next case on today's docket is the case of In Interest of G.L. Delinquent, Alleged Delinquent Minors vs. G.L. Respondent Appellant. We have Ms. Paige Strong for the appellant and Mr. Patrick Bayless for the appellant.  Thank you. Thank you for the support. This is a deceptively complicated case for a very short record. This is a juvenile adjudication for aggravated battery in an attempt to aggravate a robbery where George was ultimately sent to the Department of Juvenile Justice. I have raised six issues in this case and obviously we're not going to talk about all of them, but the few that I am going to talk about can all pretty much be supported by just a short recitation of the facts. Here we have a teenage boy, Jacob, I can't remember exactly how old he was, I think maybe 17, who was walking around 9 o'clock at night on July 8th when he was approached by two males, one that he ultimately identified as Willie L., carried a big silver gun, demanded Jacob's stuff. Jacob said he didn't have any, so Willie whacked him with the gun. He hit him in the head, which ultimately required, I think, 15 stitches. When Jacob's head snapped back from being hit, he claimed that he recognized my client, George, from school. He tried to run, but he fell. The two boys grabbed him by the legs and dragged him to the grass where they went through his pockets again and took off his shoes looking for more stuff. A third person, who may or may not have been involved in any of this, showed up and said that there was a car coming, so everybody scattered. Jacob had a hard time getting the police to listen to him. They wouldn't take him to the hospital or anything, so he calls his mom, who takes him to the hospital where he gets stitched up. The police did come there to talk to him, and he identified Willie L. by name to the police. He knew exactly who he was. He did not know who the third person was, and he identified my client only as George. He didn't know his last name or anything else about him. The police didn't interview anybody else in this case for a while, but it was July 21st, 22nd, two weeks later, when they talked to Willie L., and that's where the first error arose. Willie gave the police my client's name and said he was involved in this offense. When that testimony was brought out at the adjudicatory hearing, defense counsel objected, and the court overruled it, saying it was admissible as an explanation of the course of conduct that the police followed as part of their investigation. So that's the first issue I want to talk about. The state has conceded that that was error. The rule would allow that officer to testify that he spoke with Willie L., and that led him to perhaps the next step that he took. What he was not allowed to do was say that Willie L. told him that George was part of this offense. So the state concedes that error, but argues that it was harmless for two reasons. The first is that it is presumed that the judge would not consider him proper evidence. But what the judge actually said when he rendered his ruling in this case is I go back to the information that was provided by Willie when he identified who was along with him. Short of the judge using some magic words, and I don't know what those would be, perhaps it would be let me preface my ruling by telling you I am or am not considering this as improper evidence, I don't know what more evidence we would need to overcome the presumption that the judge actually did consider this improper testimony substantively instead of for the limited purpose for which it was admitted. The state also says there was no chance the judge would actually have found George L., not delinquent in this case, because the evidence wasn't closely balanced. We completely disagree. The evidence was very closely balanced. First, there was absolutely no physical evidence. The police spoke with George the day after this offense with about something completely unrelated, and did note that there was no injury. He didn't have any blood on him. His knuckles weren't torn up. Jacob claimed that he was beaten, punched. He wasn't kicked. He was punched. And, of course, whacked with a gun by Willie. But there was no evidence, you know, no swollen, no abrasions, nothing on my client to suggest that he had been in any sort of physical, violent altercation the night before. So we're completely missing any physical evidence there. We also have just Jacob's identification of my client, which was very, very weak, and that's the third thing I want to talk about when I get to it later. Are you saying that just the ID is not enough? In this case, no. The ID is so very weak. I can skip to that right away. Why don't you? Okay. There are several factors that are considered when determining just how strong an ID is. In this case, the first thing that cuts against this being a very strong identification is that his opportunity to observe was really weak. This entire thing lasted two to two and a half minutes, I think was the estimate. The first time that he saw, that Jacob claimed that he saw George, was when his head snapped back when he was hit. And he saw him and was like, well, that's George. I know George. He doesn't know who George is, really. He doesn't have a full name. He presumed he was George. Our theory is that he presumed he was George because he was with Willie, who Jacob knew. He went to school with Willie. So it could very well have been a contextual sort of identification. He had very limited opportunity to observe. He was under a lot of stress, obviously. He'd just been smacked in his head with a weapon. It was 9 o'clock on a July night. This is not daylight. It's not an easy situation in which to identify someone reliably. And where was he actually physically located? Out on the street. It wasn't fair contention. It wasn't good lighting. Yeah, there was some discussion about street lights. But the thing that I remember specifically about this is that there was not a, there was no testimony, as far as I recall, that we were in front of, that this whole thing happened in front of 915, 915, to confirm or deny whether or not any of those things would actually be true, whether there was good lighting, bad lighting. What we do know is 9 o'clock on a July night, and it's even dark in July at 9 o'clock. So certainly it was not ideal lighting conditions. We don't know if they were standing directly under a street light, if there was one, you know, a half block away. There's certainly not enough to show that it was an ideal situation in which he could have identified him. But he told the police officers that it was someone named George that was a friend of Willie's. That he, yeah, it was Willie L, definitely specifically Willie L, and then George. Somebody named George. And didn't he pick him out by photo as well? Ultimately, and that is something I didn't focus on very much in this case, there is, he did identify him from a photo later. There's a lot of dispute about whether he was presented with one photo just of my client, whether he was given four photos, or whether there were two photos shown to him.  between Jacob and the officers. An officer explained that he didn't give him a full photo lineup because he didn't see the point. That Jacob claimed he knew my guy, so that was enough. Show him a picture and say, is this him? What was the point of showing him a photo array? He could have, sure. He just didn't see the point. That's what the officer testified about it, and that was kind of the most in-depth discussion there was about the photo lineup itself. But he did identify him in a photo. But an interesting thing is he claimed that George, that he knew from school, who may or may not be my guy, had little twisties in his hair in school. Now, I'm not exactly sure what that means, but we do know that George had short hair at the time of this, and according to the other police officers who claimed to have known him for quite some time, had always had short hair. Short hair that was incapable of having twisties? That seems to be their point, but nobody would actually go all the way out and say his hair was short, he couldn't have had twisties in them. But they did emphasize that they were different. You know, now that you ask me that, I'm wondering what page I could point to prove to why I know that, but I'm sure that was part of the description in the photo, and it's clear in the photos, but I guess he certainly could be mixed race, and I wouldn't have known that from just the photos. So, one of the important factors in determining how reliable a identification is has now been debunked by a lot of psychological research. Just because a witness is 100% adamant that he knows who assaulted him that he can identify, does not necessarily mean that it's true. And that is not exactly what happened in this case anyway. Since he couldn't identify George as this particular George, a lot of steps had to be followed in order to get to the point that George could very well be my client, George L. When you say George, he wasn't sure that this was the right George. I know a lot of kids that age don't know the last names of their friends. Certainly. So, I mean, he could be pretty clear in his mind who George was and just not known or never cared to know his last name. Certainly possible, but it's also possible that there's 42 Georges that all go to the same school. We don't know anything about that. We do know this. George and Willie L., who is supposedly, according to this victim, who are off marauding the streets and beating people with guns, George and Willie don't like each other. They don't know if they were actually suspended from school over a brawl between the two of them, between George and Willie L., or they were threatened with it, or perhaps expelled. But these two are not friends. They are not buddies that are out running these crimes together. So that cuts against the idea that Willie and this defendant would have been together. According to who were they not buddies? That was partly George's testimony, but there was never anything that disputed that. And I believe that afterwards, there was some discussion after the judicatory hearing was over, and I think that is supported in something that the officer from Redeploy Illinois had put in his report. Willie? Oh. We'll have the opportunity for it. We'd ask that you request the trial court ruling. Thank you, Your Honor. May it please the court and counsel? I guess the best way to describe it to me is a second-degree brutal violation. It wasn't really introduced by the state for substantive purpose to show that Willie and George were together. But I call it second-degree because that's not admissible even under those circumstances. And the counsel is correct, and we can see that the evidence was not admissible beyond just getting information about what the police did after talking to Willie. But do you think the court didn't consider it or it had no effect? Well, this is where we lawyers fall into parsing the language of orders and not being able to read the mind of Judge Brandon. I do want to make a correction or perhaps a re-characterization of what counsel said. I'm not necessarily saying that I'm not disagreeing with this premise, but I'm not necessarily arguing that the judge's ruling would not have been different because the evidence was closely balanced. What I'm saying is that the ruling would not have been different because it was not a factor in the court's ultimate determination of why it adjudicated George guilty of the offenses. When you read the order, and there's no doubt that the court makes reference to that, and unfortunately as you have probably either seen in practice or have seen in records, judges can sometimes kind of go into a sort of a narrative thought process as they give a ruling. I've myself sat there in frustration listening to a long thing going, guilty or not guilty, guilty or not guilty. But I think what happens in this situation is I think that the judge is giving a recitation of things that he had written in his notes. He's got something written in his notes about Willie. He's got something written in his notes about this or that. But I think what you do, and I hear the lawyer, Lee Carson, comes into play, when you get to the next paragraph after the offending language, the court says, okay, well, this really boils down to the credibility of the witnesses. The court then proceeds to essentially lay out the reasons why it found George to be a credible witness, and the reasons that it found George to be a credible witness is because of the testimony that related to Jacob. I'm sorry, Jacob. I apologize. The reason it found Jacob to be credible, not George, is because of things that Jacob testified to with regards to his ability to see the respondent, his ability to see George as George is in front of him, going through his pockets and hitting him with his fists, and his knowledge of George having gone to the Pathways School together. Before he said, now this does boil down to the credibility of the witnesses, just before that is when he said, and I go back to the information that was provided by Willie when he identified who was along with him. That seems to be a pretty big focus. Well, and the point I'm making is that I think that up to that point, the judge is kind of laying out certain things that he's got written in his notes. I'm sort of cleaving the decision in half in that sense of it. He says, okay, well, here's what it boils down to. Jacob testified to this. This is why I find him, you know, I found this to be credible factors that allow me to find the juvenile, to adjudicate the juvenile. You know, there's a presumption that a court knows and follows the law. To some degree, the presumption is lost a little bit because the evidence was inadmissible because it was, you know, like I said, a second-degree murder violation. It's important to understand, however, that the judge's basis for admissibility was on a course of conduct which the judge recognized as not being substantive evidence but rather an explanatory type of evidence. So the presumption also comes into play to the extent that when the judge is reciting these notes, the judge isn't saying, well, I find that I believe so-and-so because of this. The judge had made the earlier determination that it was admissible under this exception to the guillotine rule under the course of conduct. Again, you know, we can't really read the mind, but we do have to apply certain presumptions that we don't necessarily or really can't do with a jury. Now, that's why I think it's important when you read the court's order to see what it particularly focused upon when it got right down to what I call the meat of the matter and why the court ultimately ruled the way it did. And that's really why I characterize it as error such as it is, was harmless error because obviously the judge's motivation and impetus for finding the juvenile delinquent was based upon his crediting the believability of Jacob's testimony at the adjudication hearing. So there is error, but it's not the type of error that is enough that we could say from this perspective that the respondent was fundamentally denied a fair hearing or that the court had relied upon this to the degree or any degree that would have rendered the decision different had the judge not considered it at all. There's no language in the order of the judge as well. I'll think of an equal. Willie did say that he was with George at the time and that sort of tips the balance and in favor of the state's evidence. I want to segue from that, I guess, into the identification aspects. Obviously we have a different view of these things. There are certain factors that go into identification testimony. I think it's always important to be cautious of reducing an analysis to a list and then kind of checking off one through six and deciding what is or isn't there. It's an analytical tool to weigh it by the circuit court, but we have to also bear in mind that the circuit court sits in a superior position to hear the testimony of the witnesses and so many factors go into credibility beyond just the written word on a piece of paper. So that also has to be given due consideration. But I do think when you look at the factors that the juvenile discusses here, there's certainly the opportunity to view a defendant. In this case, there was talk about how this lasted two, two and a half minutes, so that could be a pretty long time. There's no contestation that the respondent and Jacob went to school together. So it's certainly more than plausible for Jacob to be able to immediately identify George and not need, you know, two, five, 10, 15 minutes in order to particularly describe or formulate in his mind the specific facial features. There is that consideration now that the counsel states, I think correctly, maybe a little bit of inconsistency about exactly how Jacob was presented with the photograph, but his identification was immediate and certainly consistent with what he initially told the police while at the hospital, that his assailants were Willie, El, and Smith by the first name of George. And to get into the fact that they didn't know George's last name, well, you know, again, that I think doesn't mean anything with regards to the credibility or the reliability of the identification. It has probably more to do with, this is a guy I know from school. His name is George. They're not buddies. So it's certainly plausible that he's not going to know him as well as he knows Willie. And, in fact, the testimony by both Jacob and George is they really didn't have any problems with each other. Jacob, you know, alluded to the fact that George in the past had made a couple of derogatory comments, but that's really the extent of their interaction. So there's certainly a level of certainty. His identification occurred the day after the assault occurred, so there's certainly a proximity in time. He had the opportunity, there was testimony that there was sufficient lighting in the area for him to be able to see the facial features. And Jacob was on the ground while George was in front of him, you know, and there's a direct visual line of sight while George was attacking him. So there's a lot of factors that play, I think, considerably into the state's case with regards to the reliability of the identification, and these are the very same factors that the court stressed in its ultimate conclusion in adjudicating George guilty of the two offenses he was charged with. Those are really the only two issues that we got into today. I can answer any other issues if you want. Okay. So based upon all that and all of these, the state, in our briefs, we would ask this court to affirm the adjudication and disposition. Thank you. Thank you, Mr. Daly. Ms. Strunk, do you have the final? Mr. Fairchild. The state claims that the first error is not enough to find that George was deprived of a fair judicatory hearing. In this case, we don't have to rely on just that one. We completely disagree. We think that it's a significant enough error that it did deprive him of a fair adjudicatory hearing. There are certainly other problems in this case. We need to talk about the alibi commentary that the prosecutor made in closing and in questioning George. That's a fairly significant error as well. The weak IDs, just all of these things considered together, when you add them up, it's just almost impossible to say that he got a fair adjudicatory hearing with so many very significant errors that just trampled all over his basic rights. There are just a few other little factual things that I wanted to talk about. Something was said in the state's brief that it was never suggested that Jacob had a grudge against George so that he would be inspired to identify him as the culprit in this case if he wasn't. I agree with that. There's nothing that suggests that he had any ill intent or any malicious intent in misidentifying George. It doesn't make any difference if he had ill intent. If he's wrong, he's wrong. For whatever reason that he chose to identify George, even though the factors certainly don't seem as strong to us as they do to the state, about how the situation was a good opportunity to observe and determine that this was George. One thing I did want to point out that I didn't think of earlier is when we were talking about lighting and the two to two and a half minutes that he may have had an opportunity to look at George, it sounded to me as if a lot of the interaction happened after Jacob was taken into the grass and his shoes taken off and his pockets gone through. That sounds like that was a bigger part of the transaction between this group of boys than the initial whatever happened right out on the street. There's certainly no evidence that dragged off into the grass between houses would have been a well-lit situation. So to suggest that if he had two to two and a half minutes, say a minute and a half of the entire altercation happened in the grass, we certainly don't know that that was a good opportunity to observe and there's nothing in the record that says that it was well-lit there. And if, in fact, the person he identified as George was face-to-face with him, how could he also have been face-to-face with him while he was taking his shoes off and looking to see if there was anything in there or ruffling through his pockets? In front of him, perhaps, but face-to-face? That's kind of a physical impossibility if you're caught up in some furtive movements and making rough movements to take someone's shoes off and go through their clothes. You're certainly not eye-to-eye, as we are, so I think you would have an ideal opportunity to study. You'd be pretty close. You'd be close, but not necessarily so that you could actually see and analyze someone's features. Not like we are, where I'm looking directly at you and I can make a good evaluation of that. But if you're busy looking through your book or you're picking something up, you're grabbing something from the floor, I don't see your face. I see parts of you. I see the side of your head, maybe, or a flash. And it sounds like this is a pretty quick transaction. So certainly not the opportunity of the state would like us to think that Jacob had the time to study and determine that, well, by all means, this is a man George I know from school. And that's another point. George had been out of school. This happened in July. He had been out of school at least the last month of school. So it had been at least three months since any of these boys had seen each other. So that may have some bearing as well on how solid that identification was. It's not someone you saw every day. It's not even someone you would have seen in the last several months. So those are factors to consider as well when determining whether the identification was very strong. And just because the trial court chose to believe that another thing, it chose to believe that when Willie said that George was with him, we have to also remember that Aaron McRae testified that, no, he wasn't. George is with me. So we have two different people who are saying George was in two different places at the same time. So that adds even more question to just how solid this evidence really was. And if this court can't find that he was deprived of a fair juridictory hearing and should have a new one, it should also consider very seriously whether the state even proved beyond a reasonable doubt that George L. was the George involved in this case. The state's evidence certainly isn't strong enough to prove that beyond a reasonable doubt. You'd ask that you would reverse it outright. Thank you, Ms. John. Mr. Daly, we'll take the order under that.